IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLOBAL SOLUTIONS, LLC, a Nevada limited liability company; GREG GEREMESZ, an individual,<br><br>            Plaintiffs,<br><br>  v.<br><br>MD MARKETING, LLC, a South Dakota limited liability company; MAD DOG RESEARCH AND MANUFACTURING, LLC, a South Dakota limited liability company; ROB CRANDALL, an individual; CHRISTINE SEITZ, and individual; DOUG SEITZ, and individual; and DOES 1-10 inclusive,<br><br>            Defendants. | Case No. CV 07-489-S-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

      This matter is before the Court on Defendants MD Marketing, LLC, Mad Dog Research and Manufacturing, LLC, and Rob Crandall's Motion For Leave to File Amended Answer and Counterclaim (Docket No. 51), and Defendants MD Marketing, LLC, Mad Dog Research and Manufacturing, LLC, and Rob Crandall's Motion for Leave to File Third-Party Complaint (Docket No. 52) (the "Motions"). The Court has reviewed the Motions, the proposed third-party complaint, and the proposed amended answer and counterclaim attached to the Motions, as well

**MEMORANDUM DECISION AND ORDER - 1**

as the entire file, and finds the matter suitable for disposition upon the written record.[1] For the reasons discussed below, the Court will deny the Motion for Leave to File Third-Party Complaint, and grant in part and deny in part the Motion for Leave to File Amended Answer and Counterclaim.

## I. Background and Facts.[2]

On November 16, 2007, Plaintiffs Global Solutions, LLC ("Global") and Gregory Geremesz[3] filed a complaint against Defendants Rob Crandall, MD Marketing, LLC, Mad Dog Research & Manufacturing, LLC (collectively referred to as the "Mad Dog Defendants"), and Christine and Doug Seitz ("Seitz").[4] The complaint alleges that the Mad Dog Defendants and Seitz wrongfully exploited and profited from the use of intellectual property rights belonging to Global and Geremesz, and the twelve claims for relief include trademark infringement, violation of the Lanham Act, unfair competition, conversion of trade secrets, and breach of contract, among other claims.

The Mad Dog Defendants filed motions on May 1, 2009, seeking to amend their answer and add a counterclaim against the Global Parties, and to file a third-party complaint against

---

[1] This matter is suitable for disposition without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii).

[2] For the purposes of Defendants' Motions and the Court's memorandum, the facts as stated in the Complaint and the proposed Amended Answer and Counterclaim as well as the proposed Third-Party Complaint will be considered as true by the Court. Nothing stated herein shall constitute a factual finding by the Court.

[3] The Plaintiffs will be referred to individually as "Global" and "Geremesz," and collectively as the "Global Parties."

[4] Defendants WCI Nutrition and Ron Wardle were dismissed by stipulation of the parties on March 30, 2009. (Docket Nos. 26, 30.)

Intermountain Community Bank ("ICB"), Nathan Olsen, and Tyler Echols, whom the Mad Dog Defendants claim are responsible for additional damages. To better understand the history of the business dealings among the partes and give context to the Motions, the Court will summarize the allegations.

In 2003, Plaintiff Geremesz along with others formed Healthy Solutions, LLC ("HSL") to manufacture and distribute nutritional food supplements. Alejandro Guerrero ("Guerrero") initially supplied the formula for one of HSL's products, Supreme Greens, and asked to become included in HSL's ownership structure. Geremesz and Guerrero agreed that a new company would be formed, with each of them holding an equal ownership share. Instead, Guerrero formed Health Solutions, Inc. ("HSI"), with ownership vested solely in Guerrero. Guerrero, through HSI, also marketed Supreme Greens and other nutritional supplements.

In 2004, the Federal Trade Commission filed suit against HSL and obtained an injunction against HSL to cease distributing certain products and making certain representations regarding the health effects of Supreme Greens. HSL stopped selling any potentially controversial products that were the subject of the injunction. Instead, HSI designed new labels for the Supreme Greens products, and Geremesz and Guerrero continued to do business through HSI while abiding by the FTC's order. HSI began marketing its products to Nutra Marketing, Inc. ("Nutra"), a Boise corporation at that time owned by Nathan Olsen and Tyler Echols.

In November 2004, Nutra approached HSI seeking to become the sole distributor of HSI products, including Supreme Greens. The parties reached an agreement in January of 2005, which agreement also included covenants representing that Nutra did not own any trademarks or trade names associated with HSI's products, and that the formulas for HSI's products were trade

**MEMORANDUM DECISION AND ORDER - 3**

secrets belonging to HSI and/or Guerrero.

To supply enough product to Nutra, HSI contacted Crandall to manufacture the products. Crandall was unable to manufacture the products, however, unless HSI disclosed a portion of HSI's secret formulas, which HSI did. Sometime in 2005, Crandall joined Nutra, and in January 2006, Crandall signed a confidentiality agreement and non-compete agreement with Nutra. During the course of HSI's dealings with Nutra, Nutra acquired proprietary information concerning the formula for HSI's products as well as information about HSI's customers. Shortly after Crandall joined Nutra, Nutra terminated its contract with HSI, citing the FTC order as its reason for doing so.

Also in 2006, Guerrero decided to retire from the business. Geremesz and Guerrero reached an agreement whereby Geremesz received an assignment of rights from Guerrero and HSI, including rights in all trademarks for HSI's products such as Supreme Greens. Geremesz therefore asserts he is the sole and rightful owner of all interests in the formulas and associated trademarks for HSI products, including Supreme Greens.

Thereafter, Geremesz began marketing Supreme Greens through his own company, Global. Nevertheless, Nutra continued to market similar products, even though it had terminated its agreement with HSI. Global asserts that Nutra used and continues to use proprietary information, trademarks, and trade dress associated with Supreme Greens and other products, which Global asserts it owns.

In February 2006, litigation commenced between Global, Nutra, and their principals. Nutra filed a preemptive complaint against Guerrero and Geremesz in California, and Geremesz cross-claimed asserting trademark infringement, misappropriation of trade secrets, and unfair

**MEMORANDUM DECISION AND ORDER - 4**

competition against Nutra.  In April 2007, Geremesz and Global filed a separate action in Idaho state court against Nutra.  Nutra defaulted in the Idaho action.  In July of 2007, Global and Geremesz entered into a settlement agreement that resolved the claims asserted in both lawsuits.  As part of the agreement, Nutra assigned to Global any claims it might have had against Crandall, including breach of the covenant not to compete that Crandall had signed upon joining Nutra.

Nutra was also facing pressure from its creditors.  In April 2007, Intermountain Community Bank ("ICB") obtained a judgment against Nutra for $127,000 based upon a note secured by Nutra's assets and personally guaranteed by Crandall.  Nutra instituted foreclosure proceedings.  At the foreclosure sale, Global agreed to buy the assets ICB seized from Nutra, which assets included Crandall's assets as the personal guarantor of the note.  As a result of the purchase agreement, Global asserts that whatever rights Nutra had in Supreme Greens and other products became its assets.

Crandall, however, moved to South Dakota.  Once there, he, along with Seitz, formed the Mad Dog companies, and allegedly continued to market Supreme Greens and other proprietary products now marketed by Global.  Global alleges that the Mad Dog Defendants, in concert with Seitz, have disrupted Global's e-commerce websites, marketed Supreme Greens through Mad Dog's website, and continue to sell products using Global's proprietary formulas, labels, and trade dress.  The Global Parties seek damages and an injunction.

**MEMORANDUM DECISION AND ORDER - 5**

## II. Disposition.

**A.     Motion to Amend.**

The Global Parties do not object to the Mad Dog Defendant's proposal to amend its answer, but do object to the addition of the counterclaim against them.[5]  For that reason, the Court will grant the Mad Dog Defendant's request to amend its answer.  The proposed Counterclaim, however, will be denied for the reasons that follow.

The Mad Dog Defendants seek to add a counterclaim that centers around the loan obtained from ICB that was for a business line of credit for the benefit of Nutra.  Crandall personally guaranteed the note.  In the counterclaim, the Mad Dog Defendants allege that Olsen, one of the original owners of Nutra, fraudulently obtained funds from ICB and used them for personal use rather than for the benefit of Nutra.  Nutra never paid the amounts due, and ICB therefore declared the loan in default and instituted foreclosure proceedings.  ICB, as previously mentioned, obtained a judgment against Nutra and Crandall as personal guarantor.  The Mad Dog Defendants allege in the proposed counterclaim that the seizure of Nutra's assets was wrongful, and therefore the sale to Global from ICB was likewise wrongful.  They seek compensatory and punitive damages.

The Global Parties contend that the allegations in the proposed counterclaim do not allege any cognizable theory of recovery against them and therefore do not comply with Fed. R. Civ. P. 8.  They assert that the "single proposed counterclaim" lacks any differentiation between the conduct alleged, and fails to identify a legal theory of recovery.  Rather, they argue that the counterclaim purports to hint at several legal theories of recovery, such as conversion, fraud,

---

[5]  Sietz filed a notice of non-objection to the proposed amended answer and counterclaim. (Docket No. 53.)

**MEMORANDUM DECISION AND ORDER - 6**

misrepresentation, and other business torts without actually identifying them by name. The Mad Dog Defendants replied that they complied with Rule 8, and the Global Parties adequately identified in their brief the asserted legal theories of recovery.

Fed. R. Civ. P. 8(a) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and a "demand for the relief sought." A claim comprises the "aggregate of operative facts which give rise to a right enforceable in the courts." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000). To comply with Rule 8, a plaintiff must set forth the elements of his or her claim, identify the transaction or occurrence giving rise to the claim, and the elements of the prima facie case. *Bautista,* 216 F.3d at 841. The statement of facts must, therefore, contain a statement of facts that support all of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."), *cited with approval in Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949–51 (2009)).

In addition, Fed. R. Civ. P. 10 requires a party to state its claims in numbered paragraphs, each limited to a single set of circumstances, and if it would promote clarity, each claim founded on a separate transaction or occurrence must be stated in a separate count. Separate counts "will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims," especially where multiple claims are asserted, if the claims arise out of separate transactions or occurrences, and if a separate statement will facilitate a clear presentation. *Bautista*, 216 F.3d at 840–41 (citing 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1324 (3d ed. 1997)). If there are

**MEMORANDUM DECISION AND ORDER - 7**

multiple plaintiffs and defendants, it is also necessary that the claims of each plaintiff against the defendant or defendants be separated into different counts. *Id.* at 840. "[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Id.* at 841.

The Mad Dog Defendants' counterclaim does not satisfy the above standards. In this case, there are three Mad Dog Defendants and two Global Parties. The counterclaim is asserted as one claim with multiple paragraphs. It appears that paragraphs 32–36 contain the theories of recovery. But, it is not clear if Crandall, MD Marketing, LLC, or Mad Dog Research and Manufacturing, LLC asserts these claims of recovery individually or as a group, and against which of the two plaintiffs, Global or Geremesz. It is also not clear if the claims relate to a different set of operative facts, or are based upon only the recitations preceding those paragraphs, considering paragraphs 34–36 contain additional facts not previously mentioned. There also appear to be multiple claims plead within paragraphs 32–36, such as conversion, intentional interference with contract, fraud, and unfair competition, but these claims are not differentiated or asserted in any way that would permit the Global Plaintiffs to frame a response and assert defenses.

Accordingly, in the exercise of the Court's discretion, the Court will permit the Mad Dog Defendants to file its proposed amended answer but will deny its motion to add the proposed counterclaim.

## B.     Motion to File Third Party Complaint.

The proposed third party complaint involves the relationship between Crandall, Nutra, Nutra's owners Echols and Olsen, and Nutra's lender, ICB. The Mad Dog Defendants assert that Olsen improperly obtained Nutra's loan proceeds and converted them to his personal use, thereby causing ICB to foreclose on the note and wrongfully obtain assets belonging to Crandall. The second claim asserts that ICB, Olsen and Echols conspired together to fraudulently induce the sale of Crandall's assets seized during the foreclosure proceedings to the Global Parties, and convert property owned by Crandall for their own use. The third claim asserts that ICB, Olsen and Echols conspired together and interfered with Crandall's contractual relationships.

The Global Parties contend that the proposed third party claims are not properly brought as third party claims because the claims are not dependent upon the outcome of the trademark infringement claims in the complaint, and there is therefore no derivative liability. In other words, the Global Parties argue that the claims asserted against ICB, Olsen and Echols are independent claims based upon the Mad Dog Defendants' assertion that ICB handled Nutra's loan improperly. The Mad Dog Defendants contend that the claims in the proposed third-party complaint arise from the same conduct underlying the complaint, and as such, will enable the parties to litigate all claims arising from the conduct of the parties.

Fed. R. Civ. P. 14 (a)(1) permits a defendant to ask for leave of the court to file a third-party complaint if it is not filed within ten days after the defendant's original answer is served. *Sw. Adm'rs Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). The decision whether to allow a third-party complaint is left to the trial court's discretion. *Sw. Adm'rs, Inc.,* 791 F.2d at 777.

**MEMORANDUM DECISION AND ORDER - 9**

Rule 14(a)(1) permits a defending party to serve a summons and complaint on a nonparty "who is or may be liable to it for all or part of the claim against" the defending party. Contained within the rule itself is the requirement that the third party have some liability owed to the defendant as a result of the claims asserted in the complaint. In other words, the third party must be "secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *Id.* (citing 6 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1442, at 202-03 (1971)). Thus, a third-party claim may be asserted only when:

> the third party's liability is in some way dependent on the outcome of the main claim and is secondarily or derivative thereto. . . . [The claim] cannot simply be an independent or related claim but must be based upon plaintiff's claim against defendant. The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.

*Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199-200 (9th Cir. 1988) (internal citations omitted).

Upon review of the proposed third-party complaint, the Court can discern no basis for derivative liability on the part of ICB, Echols, or Olsen for the claims the Global Parties asserted against the Mad Dog Defendants. The Global Parties allege that the Mad Dog Defendants have infringed upon certain trademarks, engaged in unfair competition, misappropriated its proprietary information and intellectual property, and seek damages as well as injunctive relief based upon the improper appropriation and use of Global's intellectual property. The third-party complaint, which arguably arises out of the same nucleus of operative facts, is an independent claim for damages asserted by the Mad Dog Defendants against ICB and others for mishandling

Nutra's loan, conversion of Crandall's property, and improper sale of Crandall's assets. These claims in no way depend upon the Mad Dog Defendants' liability to the Global Parties. Accordingly, the Court will deny the motion to file the third-party complaint.

### III.  Conclusion.

As discussed above, the counterclaim as presented does not comply with Rule 8 or Rule 10, and the third-party complaint does not satisfy Rule 14.  In the exercise of the Court's discretion, the motion to amend the answer to add a counterclaim and the motion to file the third-party complaint will be denied.  Defendants may, however, amend their answer as proposed, since there was no objection thereto.

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendants' Motion for Leave To File Amended Answer and Counterclaim (Docket No. 51) is **GRANTED IN PART and DENIED IN PART** consistent with this opinion.

2) Defendants' Motion for Leave to File Third-Party Complaint (Docket No. 52) is **DENIED**.



DATED: November 3, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge